UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AL CASTELLANOS                                              CIVIL ACTION

VERSUS                                                      NO. 07-7796

JEFFERSON PARISH                                            SECTION:  "C"(3)
CORRECTIONAL CENTER, ET AL.

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Al Castellanos, a state prisoner, filed this *pro se* and *in forma pauperis* complaint against the Jefferson Parish Correctional Center, Brian Dottolo, Jean M. Llovet, Sue Ellen Penouilh, and Sheriff Newell Normand.[1]   In this lawsuit, plaintiff asserts claims for excessive force and inadequate medical care.

Defendant Jean M. Llovet has filed a motion to dismiss;[2] however, because she presented with the motion matters outside of the complaint for the Court's consideration, the parties were notified that the motion would be treated as one for summary judgment pursuant to Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(b).[3]

---

[1] Plaintiff originally named Sheriff Harry Lee as a defendant; however, due to Lee's death, plaintiff amended the complaint to substitute Normand in Lee's place.  Rec. Doc. 20.

[2] Rec. Doc. 16.

[3] Rec. Doc. 21.

In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In the complaint, plaintiff alleges that he was beaten by Officer Brian Dottolo on October 20, 2006, and sustained serious injuries. Plaintiff further alleges that he did not receive adequate medical care for those resulting injuries. The instant motion concerns only plaintiff's claims against Jean M. Llovet, the health service administrator for the Jefferson Parish Correctional Center, for inadequate medical care. Llovet argues that she is entitled to judgment as a matter of law as to the both the individual-capacity and the official-capacity claims asserted against her. For the following reasons, the undersigned agrees.

2

Facts

The parties are essentially in agreement as to the underlying facts regarding plaintiff's medical claims. Those undisputed facts are as follows.

Plaintiff was injured on October 20, 2006, and taken to the infirmary. He was examined by the unidentified nurse on duty, who determined that plaintiff was "alert and oriented," had "moderate" bleeding from the right nostril, and had a "small [amount of] swelling and slight bruising" on his right cheek. Plaintiff's injuries were cleaned, an ice pack was applied to his right nostril, and he was given pain medication. The nurse instructed plaintiff to return to the infirmary on the following morning if his pain persisted.[4]

Plaintiff did not return the following morning; however, on October 24, 2006, plaintiff's attorney called Llovet and stated that plaintiff needed medical attention. Llovet had plaintiff brought to the medical department that same day. Upon examination, she noted that plaintiff's right eye was red and surrounded by a purple ring. Llovet made arrangements to have plaintiff seen by the staff's nurse practitioner the following day.[5]

On October 25, 2006, he was examined by the unidentified nurse practitioner who determined that plaintiff might have a right orbital fracture.[6] He was placed on pain medication and an x-ray was ordered.[7]

---

[4] Rec. Doc. 1, Exhibit A.

[5] Rec. Doc. 1, Exhibit B.

[6] Rec. Doc. 1, Exhibit E.

[7] Rec. Doc. 1, Exhibit D.

On October 26, 2006, the x-ray was taken and showed a possible right orbital fracture.[8]

On Friday, November 3, 2006, plaintiff submitted a request for medical services complaining of continuing pain.  Llovet received that request on Monday, November 6, 2006, and she scheduled an appointment for plaintiff to see the staff physician on the following day.[9]

On November 7, 2006, plaintiff was examined by the physician.  The physician again placed plaintiff on pain medication, noted that a CT scan of the injury should be performed, and ordered that plaintiff return to the medical department for a follow-up examination in two or three weeks.[10]

On November 9, 2006, Dr. Green faxed a referral form regarding plaintiff to the L.J. Chabert Medical Center ("Chabert"), noting the need for the CT scan.[11]  The following day, Friday, November 10, Llovet was notified that Chabert could not arrange the CT scan and was instructed to contact the Earl K. Long Medical Center ("Long") for assistance.[12]

On Monday, November 13, 2006, the jail medical staff faxed a referral form to Long, requesting an appointment "ASAP" for the CT scan.[13]  Long scheduled plaintiff an appointment for January 26, 2007.[14]

---

[8] Rec. Doc. 1, Exhibit G.

[9] Rec. Doc. 1, Exhibit F.

[10]  Rec. Doc. 1, Exhibits D and E.

[11]  Rec. Doc. 1, Exhibit E.

[12]  Rec. Doc. 16, Exhibit 7.

[13]  Rec. Doc. 16, Exhibit 8.

[14]  Rec. Doc. 1, Exhibit H.

The medical records reflect that plaintiff was again seen in the medical department on November 21, 2006,[15] and December 19, 2006.[16]  He was continued on pain medication, and it was noted that an additional follow-up examination would be performed once the results of the CT scan were available.[17]

On January 5, 2007, nurse Paul Galantowicz completed a "Referral for Off-Site Services" form requesting that plaintiff be transported to Long for his appointment on January 26, 2007.[18]  For reasons that are not apparent from the record, plaintiff was not in fact transported to that appointment as requested.

During plaintiff's annual evaluation on April 19, 2007, it was discovered that the CT scan had never been performed.  On that same date, an appointment was requested and secured for plaintiff at the Medical Center of Louisiana in New Orleans for May 16, 2007.[19]  On April 20, 2007, Galantowicz completed a "Referral for Off-Site Services" form requesting that plaintiff be transported to that appointment.[20]  That appointment was apparently kept.  However, plaintiff complains that, by that date, his injuries had already healed.

------

[15]  Rec. Doc. 1, Exhibit E.

[16]  Rec. Doc. 1 Exhibit D.

[17]  Rec. Doc. 1, Exhibit D.

[18]  Rec. Doc. 16, Exhibit 10.

[19]  Rec. Doc. 16, Exhibits 11 and 12.

[20]  Rec. Doc. 16, Exhibit 13.

### Official-Capacity Claim

Llovet argues that plaintiff's allegations are insufficient to support an official-capacity claim against her.  She is correct.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."  Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999).  Accordingly, an official-capacity claim against Llovet would in reality be a claim against the local governmental body itself.  However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must allege that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference.  See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999).  Plaintiff does not allege that his purported inadequate medical care resulted from such an official policy or custom, and, therefore, the official-capacity claim against Llovet necessarily fails.

### Individual-Capacity Claim

Llovet next argues that the individual-capacity claim against her for inadequate medical care is without merit.  Again, this Court agrees.

It must always be remembered that allegations of mere medical malpractice or negligence alone are *never* sufficient to state a federal claim for inadequate medical care.  Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999).  On the contrary, the federal constitutional right of an incarcerated person to medical care is violated *only* when his serious medical needs are met with *deliberate*

6

*indifference* on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447,

457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999)

(convicted prisoner).  The United States Fifth Circuit Court of Appeals has cautioned:

> Deliberate indifference is an extremely high standard to meet. ... [T]he
> plaintiff must show that officials refused to treat him, ignored his complaints,
> intentionally treated him incorrectly, or engaged in any similar conduct that would
> clearly evince a wanton disregard for any serious medical needs. Furthermore, the
> decision whether to provide additional treatment is a classic example of a matter for
> medical judgment.  And, the failure to alleviate a significant risk that [the official]
> should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation

marks and citations omitted).  Moreover, "deliberate indifference cannot be inferred merely from

a negligent or even a grossly negligent response to a substantial risk of serious harm."  Thompson,

245 F.3d at 459.

It must further be remembered that even if plaintiff's federal constitutional rights were

violated, Llovet may not be held liable in her individual capacity for such a violation merely because

she holds a supervisory position within the jail's medical department.  A supervisory official may

not be held liable pursuant to 42 U.S.C. § 1983 under *any* theory of vicarious liability.  Thompkins

v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002)

("Section 1983 does not create supervisory or *respondeat superior* liability.").  Further, "there is no

concept of supervisor strict liability under section 1983." Harris v. Greer, 750 F.2d 617, 618 (7th Cir.

1984); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Castillo v. Blanco, Civ. Action

No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

Rather, Llovet may be held liable under federal law only for constitutional violations resulting from her *personal involvement*.  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").  When the Court, as it must, looks *only* to the actions of Llovet herself, it is clear that those actions are insufficient to support a claim for inadequate medical care under federal constitutional law.

Llovet's first personal involvement with plaintiff's care was when she was called by plaintiff's attorney on October 24, 2006, and informed that plaintiff needed medical attention.  Her response to that call was to have plaintiff brought to the medical department that very *same day*.  Upon examining plaintiff and noticing that his right eye was in fact red and surrounded by a purple ring, she made arrangements to have plaintiff seen by the staff's nurse practitioner the *following day*.

Second, on November 6, 2006, Llovet received plaintiff's request for medical services complaining of continuing pain.  In response, she scheduled an appointment for plaintiff to see the staff physician on the *following day*.

Third, on Friday, November 10, 2006, the L.J. Chabert Medical Center notified Llovet that Chabert could not arrange a CT scan as requested and instructed her to contact the Earl K. Long Medical Center for assistance.  In response, on Monday, November 13, 2006, the jail medical staff faxed a referral form to Long, requesting an appointment "ASAP" for the CT scan, and Long in fact scheduled plaintiff an appointment for January 26, 2007.

Therefore, in all three instances in which Llovet was personally involved in securing medical care for plaintiff, she acted promptly.  Deliberate indifference certainly cannot be inferred from her actions.  Accordingly, the individual-capacity claim against her is without merit.

<u>State Law Claims</u>

With respect to plaintiff's state law medical malpractice and negligent treatment claims against Llovet, she argues those claims must be dismissed because plaintiff failed to exhaust his state statutory remedies as required by La.Rev.Stat.Ann. § 40:1299.47.  Plaintiff does not dispute the factual contention that he failed to exhaust those remedies or argue that Louisiana law does not require exhaustion with respect to his claims against Llovet.  Accordingly, the Court finds that it is appropriate to dismiss the state law claims as premature because plaintiff failed to exhaust his state statutory remedies as required by Louisiana law.  <u>See</u> <u>Robert Andrew Parish v. Harry Lee</u>, Civ. Action No. 02-2655 (E.D. La. July 15, 2003); <u>see also</u> <u>Adams v. Foti</u>, Civ. Action No. 02-1059, 2004 WL 241859, at *3-4 (E.D. La. Feb. 5, 2004).

<u>Jefferson Parish Correctional Center</u>

The Court notes that the caption of the complaint indicates that plaintiff is also suing the Jefferson Parish Correctional Center in this lawsuit.  However, to the extent that plaintiff intended to name that entity as a defendant, it is clear that "a jail is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983."  <u>Castillo v. Blanco</u>, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); <u>see also</u> <u>Martinez v. Larpenter</u>, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); <u>Cullen v. DuPage County</u>, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Correctional Facility Administration</u>, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); <u>Powell v. Cook County Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993); <u>Brooks v. Pembroke City Jail</u>, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); <u>Mitchell v. Chester County Farms Prison</u>, 426 F. Supp. 271, 274

(E.D. Pa. 1976).  Accordingly, any claim against the Jefferson Parish Correctional Center should

be dismissed as frivolous and for failing to state a claim on which relief may be granted.[21]

## RECOMMENDATION

It is therefore **RECOMMENDED** that the motion for summary judgment, Rec. Doc. 16, be

**GRANTED**.

It is **FURTHER RECOMMENDED** that the federal law claims against Jean M. Llovet be

**DISMISSED WITH PREJUDICE**.

---

[21]   Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

It is **FURTHER RECOMMENDED** that the state law claims against Jean M. Llovet be **DISMISSED WITHOUT PREJUDICE** as premature based on plaintiff's failure to exhaust his state statutory remedies.

It is **FURTHER RECOMMENDED** that plaintiff's claim against the Jefferson Parish Correctional Center be dismissed as frivolous and for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this sixteenth day of May, 2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

11